RODGER R. COLE (CSB NO. 178865)
rcole@fenwick.com
KIMBERLY I. CULP (CSB NO. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     (650) 988-8500
Facsimile:      (650) 938-5200

Attorneys for Defendant
SYNGENTA BIOTECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GREG LeFEBVRE and DANISCO US INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>SYNGENTA BIOTECHNOLOGY, INC.,<br><br>                    Defendant. | Case No. 5:08-cv-02732-JW<br><br>**DECLARATION OF RODGER R. COLE IN SUPPORT OF DEFENDANT SYNGENTA BIOTECHNOLOGY, INC.'S MOTION TO DISMISS DANISCO AND TO STAY PROCEEDINGS**<br><br>Date:          October 20, 2008<br>Time:          9:00 a.m.<br>Judge::        The Honorable James Ware<br>Courtroom:  8 |

I, RODGER R. COLE, hereby declare:

1.       I am an attorney duly admitted to practice in California and before this Court.  I am a partner at the law firm of Fenwick & West, LLP in Mountain View, California, and have been retained as counsel for Syngenta Biotechnology, Inc. ("Syngenta"), in the above-captioned action.  Unless otherwise noted, I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the facts set forth herein.

2.       On May 12, 2008 Syngenta filed a Verified Complaint against Greg LeFebvre in the Superior Court of the State of North Carolina, County of Wake to enforce an Agreement Concerning Confidentiality, Proprietary Rights and Restrictive Covenants.  Attached as

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   **Exhibit 1** is a true and correct copy of the Verified Complaint filed by Syngenta Biotechnology,

2   Inc. against Greg LeFebvre in the Superior Court of the State of North Carolina, County of

3   Wake, on May 12, 2008.

4          3.      Syngenta also sought a temporary restraining order to prevent LeFebvre from

5   commencing employment with his new employer, Danisco US Inc.  That request was heard by the

6   court on May 14, 2008, in which counsel for all parties were present.  The court denied Syngenta's

7   request on May 16, 2008.

8          4.      On June 12, 2008 LeFebvre filed a motion to dismiss or, in the alternative, to stay

9   the case *Syngenta Biotechnology, Inc. v. Greg LeFebvre*, Case No. 08 CVS 8376, State of North

10  Carolina, County of Wake.  I am informed and believe that the court will likely hear that motion on

11  or about August 4, 2008.  Attached as **Exhibit 2** is a true and correct copy of Defendant's Motion

12  to Dismiss or, in the Alternative, to Stay Plaintiff's Action filed on June 12, 2008 by Greg

13  LeFebvre in *Syngenta Biotechnology, Inc. v. Greg LeFebvre*, Case No. 08 CVS 8376, State of

14  North Carolina, County of Wake.

15         5.      I am informed and believe that Syngenta intends to file a motion for preliminary

16  injunctive relief in the North Carolina action on or about July 3, 2008.  Based on information and

17  belief, that motion will likely be scheduled for a hearing on or about August 4, 2008.

18         6.      Attached hereto as **Exhibit 3** is a true and correct copy of the Complaint for

19  Declaratory Relief filed in this case.

20         I declare under penalty of perjury under the laws of the State of California that the

21  foregoing is true and correct.  Executed on June 30, 2008 at Mountain View, California.

22

23                    ___*/s/ **Rodger R. Cole**___
                        Rodger R. Cole

24                                                              *1286834*

25

26

27

28

Fenwick & West LLP
Attorneys At Law
Mountain View

EXHIBIT 1 TO
DECLARATION OF RODGER R. COLE

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS _____

---

SYNGENTA BIOTECHNOLOGY, INC.,

                Plaintiff,

v.

GREG LeFEBVRE,

                Defendant.

**<u>VERIFIED COMPLAINT</u>**

**(SEEKING TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION,
PERMANENT INJUNCTION AND OTHER
RELIEF)**

---

Plaintiff, Syngenta Biotechnology, Inc. ("Syngenta"), by and through counsel, submits its

Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent

Injunction and Other Relief against the Defendant, Greg LeFebvre, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Syngenta brings this action to stop a calculated plan by a key employee and a

main competitor of Syngenta, to breach the covenant not to compete in the employee's binding

contract with Syngenta.  Defendant's new employment with a direct competitor is a purposeful

and intentional breach of Defendant's non-compete agreement, and plainly threatens to

irreparably damage Syngenta by disclosure of its confidential and trade secret information in the

highly proprietary and emerging biotechnology areas of enzymes, bioprocessing, and biofuels.

Indeed, as recognized in the contract itself, the paramount purpose of the specifically negotiated

non-compete provision is to prevent precisely the threat to Syngenta's business presented in this

case—*i.e.*, a key employee with total access to Syngenta's most valuable trade secrets taking a

similar key position for a direct competitor, and working in the same biotechnology areas.

2.     As set forth herein, Defendant's key position as Syngenta's Global Business Director, Bioprocessing allowed him unique and total access to Syngenta's most critical trade secrets and proprietary information.   Despite an agreement with Syngenta that contained a covenant not to compete, Defendant and his new employer, Danisco US Inc., hatched a secret plot for Defendant to repudiate his non-compete agreement, resign his employment, relocate to California, and take a position with Dansico's Genencor Division that overlaps the key position he held at Syngenta, involving the development and commercialization of enzyme technology similar to that which he was responsible at Syngenta.  This competing employment breaches the covenant not to compete in his contract with Syngenta.  Indeed, so calculating were their plans, Defendant and Danisco filed a declaratory judgment action in California seeking to void the Defendant's covenant not to compete <u>within hours</u> of Defendant tending his immediate resignation, without any prior notice, to Syngenta in North Carolina on May 1, 2008.

3.     Syngenta seeks a temporary restraining order, preliminary and permanent injunctive relief, as well as monetary damages, to hold Defendant to the promises he made and enjoin defendant from breaching his valid and enforceable covenant not to compete with Syngenta, to prevent the threatened disclosure of Syngenta's enormously valuable proprietary information and trade secrets to the benefit of Danisco, a direct competitor, and to prevent irreparable damage and harm to Syngenta.

## PARTIES, JURISDICTION AND VENUE

4.     Syngenta is a Delaware corporation with its principal place of business in Research Triangle Park, North Carolina.   Syngenta is in the business of developing and marketing plant science technology ("biotechnology"), including the research, development, and commercialization of products for use in the biofuels industry.

5. Defendant Greg LeFebvre resides in Wake County at 14229 Allison Drive, Raleigh, North Carolina, which is within Wake County, North Carolina. Defendant is a former employee of Syngenta who, until his sudden resignation, served as Syngenta's Director of Global Bioprocessing Business.

6. This Court has jurisdiction over the subject matter of this suit, in that it is a civil action seeking damages in excess of $10,000, and as this action seeks preliminary and injunctive relief as provided in N.C. Gen. Stat § 1-493.

7. This Court has personal jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4. Defendant is a natural person domiciled and located within North Carolina, and his acts and omissions as alleged herein have caused injury to Syngenta in North Carolina.

8. Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-82, as Defendant resides or is located in this judicial district.

## FACTS

### I. Syngenta's Employment Of Defendant Pursuant To A Reasonably Limited Covenant Not To Compete That Provides For Defendant To Be Paid During The Restricted Period.

9. Syngenta is a global leader in agrichemicals, plant seed and biotechnology, with employees and facilities throughout the world, including facilities in Research Triangle Park, North Carolina.

10. Syngenta's facilities in Research Triangle Park are focused on the development of cutting-edge innovations and technologies in the highly proprietary and emerging biotechnology areas of enzymes, bioprocessing, and biofuels. Research Triangle Park is Syngenta's central location for biofuels product development.

11. Syngenta hired Defendant in July 2006 as its Global Business Director, Bioprocessing. In this key position, Defendant would have access to, and take the central

leadership role in the development of, some of Syngenta's most valuable and proprietary trade secrets and biotechnology. This key position, based in Syngenta's Research Triangle Park facility, was highly compensated, and by May 2008, Defendant was earning in excess of $200,000 per year.

12. At the inception of his employment, in consideration of, and as a condition to, his being hired as an employee of Syngenta, Defendant entered into an Agreement Concerning Confidentiality, Proprietary Rights and Restrictive Covenants, dated July 21, 2006 (hereinafter referred to as the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A, and is incorporated by reference herein.

13. Syngenta and Defendant specifically negotiated the terms of the Agreement and the terms of Defendant's employment at Syngenta. Upon information and belief, Defendant was represented by counsel during these negotiations.

14. Because of Defendant's nearly unfettered access to Syngenta's most valuable information and trade secrets, Defendant acknowledged that a covenant not to compete was essential to protect Syngenta's legitimate business interests.

15. Because of Defendant's key position, and the commercial value of the confidential information and trade secrets to which he would have access, Defendant was just one of six (6) key employees (out of all of Syngenta's approximately 300 employees) who was subject to a covenant not to compete with a "garden leave" provision that provided for Defendant to be paid during the restricted period of the covenant.

A. **The covenant not to compete is reasonably limited as to time, geography, and scope of activities.**

16. Defendant specifically agreed that because he would have a key leadership position, with near-total access to some of Syngenta's most valuable and proprietary trade secrets

and biotechnology, the covenant not to compete contained in paragraph 6(d) of the Agreement

was reasonable and necessary to protect Syngenta's confidential and trade secret information.

17.    Defendant expressly agreed that because of his comprehensive access to, and

leadership role in the development of, Syngenta's trade secrets, he would inevitably rely on

Syngenta's trade secrets if he took a competing position with another company.    Specifically,

Defendant agreed as follows:

> Employee acknowledges and agrees that the duties and responsibilities to be
> performed by Employee for the Company are of a special and unusual character
> which have a unique value to the Company, the loss of which cannot be
> adequately compensated by damages in any action in law.  As a consequence of
> Employee's unique position as the Global Business Director, Bioprocessing.
> Employee also acknowledges and agrees that Employee will have broad access to
> Confidential Information, that Confidential Information will in fact be developed
> by Employee in the course of performing duties and responsibilities for the
> Company, and that the Confidential Information furnishes a competitive
> advantage in many situations and that employment in the Marketing and/or Sales
> Business Development functions (the "Restricted Department") of another Person
> engaged in manufacture and/or sale of enzyme products for bioprocessing (the
> Business") in the following countries:  the United States of America, Brazil,
> Mexico, China, Canada, France, England, Germany (hereinafter defined as the
> "Major Enzymes Markets") would by virtue of the nature of such employment
> inevitably lead Employee to rely on or utilize such Confidential Information.
> Thus, Employee acknowledges and agrees that it is both reasonable and necessary
> for the covenants in this Section to apply to Employee's activities throughout the
> Major Enzymes Markets.

18.    Because he agreed that if he took competing employment, he would inevitably

rely on or use Syngenta's confidential information and trade secrets, Defendant agreed that

following his termination for any reason from Syngenta, he would abide by abide by the terms of

the Agreement's covenant to compete.  Specifically, the Agreement provides as follows:

> In recognition of the special and unusual character of the duties and
> responsibilities of Employee when employed with the Company and as a material
> inducement to the Company (to continue) to employ Employee in this special and
> unique capacity, Employee covenants and agrees that upon termination of
> Employee's employment for any reason and for twelve (12) months thereafter,
> Employee shall not, on Employee's own account or as an employee, associate,
> consultant, partner, agent, principal, contractor, owner, officer, director, member,

manager or stockholder of any other Person who is engaged in the Business (collectively, the "Restricted Persons"), directly or indirectly, alone, for, or in combination with any one or more Restricted Persons, in one or a series of transactions: (a) serve in any capacity in the Restricted Department of any Person who is engaged in the Business in any country in the Major Enzymes Markets; (b) provide consultative services to the Restricted Department of any Person who is engaged in the Business in any country within the Major Enzymes Markets; (c) call upon any of the depositors, customers or clients of the Company (or any subsidiary, affiliate, or parent company of Company who is also engaged in the Business) who were such at any time during the twelve-month period ending on the termination of Employee's employment with the Company, whose needs Employee gained information about during his employment with the Company for the purpose of soliciting or providing any product or service similar to that provided by the Company or any subsidiary, affiliate, or parent company of the Company; (d) solicit, divert, or take away, or attempt to solicit, divert or take away any of the customers or clients of the Company (or any subsidiary, affiliate, or parent company of the Company who is also engaged in the Business) who were such at any time during the twelve-month period ending on the termination of Employee's employment with the Company, whose needs Employee gained information about during his employment with the Company; or (e) induce or attempt to induce any employee of the Company or any subsidiary, affiliate, or parent company of Company to terminate his employment with the Company or any subsidiary, affiliate, or parent company of Company or to accept employment with any Person (whether or not such employee was subject to a covenant not to compete with the Company). For purposes of this paragraph, "Person" shall mean any individual, person, partnership, limited liability company, joint venture, corporation, company, firm, group or other entity.

19.     This covenant is reasonably limited and narrowly tailored to protect Syngenta's legitimate business interests and its confidential information and trade secrets to which Defendant would obtain access by virtue of his key position at Syngenta.

20.     This covenant is reasonably limited to one year following the termination of Defendant's employment, in light of the novel, emerging, and pre-market technologies for which Defendant would bear responsibility for developing at Syngenta.

21.     The covenant's scope of restricted activities is reasonably limited.  The covenant does not prevent Defendant from working for a competitor entirely, but only from working in the "Marketing and/or Sales Business Development" functions for a company engaged in the manufacture and/or sale of enzyme products for bioprocessing in a "Major Enzyme Market."

6

22.    The covenant's geographic scope is reasonably limited to companies engaged in business in the anticipated "Major Enzymes Markets", which are the United States of America, Brazil, Mexico, China, Canada, France, England, and Germany.  This geographic limitation is reasonably limited to only those eight countries that Defendant and Syngenta believed and agreed would form the major markets for the novel, emerging, and pre-market technologies for which Defendant would bear responsibility for developing at Syngenta.

23.    As is manifest from the Agreement, Defendant, with his background and experience, would have enormous opportunities to take employment with virtually any company (even biotechnology companies and competitors of Syngenta, including Danisco), anywhere in the world, so long as he refrained from working in the Marketing and/or Sales Business Development functions of any company engaged in the manufacture and/or sale of enzyme products for bioprocessing in a "Major Enzyme Market."

24.    In addition, the Agreement contains a confidentiality covenant, underscoring the mutually-agreed importance of protecting Syngenta's confidential information and trade secrets.  The confidentiality covenant is contained in paragraph 4 of the Agreement.  The Agreement requires Defendant to safeguard and hold Syngenta's confidential information and trade secrets in strictest confidence, as follows:

> During the term of employment, and thereafter, Employee will not, except as required in work assigned Employee by the Company, directly or indirectly, use for Employee or for others, or publish, or disclose to any third party any information, knowledge or data relating to the Company, its predecessors or affiliates or to any third party business contact of the Company, such as a customer or potential customer of the Company, as well as any other information, knowledge or data owned by, controlled by or in the possession of the Company, its predecessors or affiliates (whether or not utilized by the Company, its predecessors or affiliates and whether or not obtained, acquired or developed by Employee) or disclosed to the Company, its predecessors or affiliates or Employee by a third party during the term of employment with Company or any of its predecessors or affiliates (hereinafter "Confidential Information").

7

Confidential Information includes, but is not limited to: product or service information, including product formulations; fees, costs and pricing structures; distribution and sales methods and systems; sales and profit figures; marketing information; advertising and pricing strategies; analyses; diagrams; reports; computer software, including operating systems, applications, and program listings; flow charts; manuals and documentation; databases; accounting and business methods; business plans; innovations, designs, ideas, inventions and new developments and methods, whether patentable or unpatentable and whether or not reduced to practice; trade secrets; manufacturing know-how; raw material and product specifications; analytical techniques; quality control tests and procedures; proprietary information; customer lists; existing and prospective clients, distributors, agents, suppliers and customers and other information related thereto; and all similar and related information in whatever form. It is agreed that the above obligations shall not apply to (a) any Confidential information that is now publicly available, (b) any Confidential Information that subsequently becomes publicly available other than by a breach of this Agreement or other than by a breach of any confidentiality agreement with a predecessor or affiliate of the Company or (c) any Confidential Information that Employee receives free of any obligation of confidentiality or restrictions on use from a third party after termination of employment with the Company.

**B.      The Agreement contains a "garden leave" provision to provide payments to Defendant during the restricted period of the covenant—even if he accepts other employment—so long as complies with the reasonably limited terms of the covenant not to compete.**

25.      Defendant was one of only a handful of employees at Syngenta who was offered a non-compete agreement with a specifically negotiated "garden leave" provision. Defendant and Syngenta agreed that Syngenta would provide him compensation during the period of the non-compete. Specifically, the Agreement provides, in relevant part, as follows:

In partial consideration for Employee's agreement to not compete with Syngenta in this manner, within ten (10) days of the end of: (a) each of the first 11 months of Employee's non-compete period Syngenta will pay to Employee an amount equal to ½ of employee's monthly base salary, and (b) the end of the 12th month of such non-compete period, Employee shall be paid an amount equal to 25% of Employee's base annual salary, in each case as such salary existed on the date of termination.

26.      As is plain, not only did this garden leave provision provide an assurance that Defendant would not be without income to support himself and his family should he not find (or choose not accept) employment following his termination, but it would also allow Defendant to

accept any employment outside the narrow restrictions of the covenant <u>and</u> still be paid by Syngenta.

## II.    Syngenta's Confidential, Proprietary, and Trade Secret Information.

27.    Syngenta has developed proprietary research, methods, and procedures related to plant science technology that are technical in nature, derive independent commercial value from not being known or readily ascertainable, and are subject to reasonable means to maintain their secrecy.  As relevant to this matter, this confidential, proprietary and trade secret information includes, but is not necessarily limited to, the following (hereinafter collectively and separately referred to as the "Trade Secret Information"):

a.    Confidential, proprietary, and trade secret information concerning Syngenta's Bioprocessing business, which relates to the processing/conversion of feedstock (such as corn, milo, wheat, or barley) into valuable components and compounds.

b.    Confidential, proprietary, and trade secret information concerning Syngenta's Renewable Fuels ("biofuels") business, which relates to the conversion of feedstock to ethanol, which is blended with gasoline.  This technology represents a substantial investment of resources by Syngenta, and is considered one of Syngenta's most significant business growth opportunities.

c.    Confidential, proprietary, and trade secret information concerning Syngenta's enzyme business, which relates to commercialization of enzymes (biological catalysts) which are designed to be used for animal nutrition and for processing feedstock to value added components.  By way of illustration, Syngenta is presently developing proprietary enzyme technology and systems to convert plant waste and pre-treated cellulosic biomass into biofuels.

d.    Confidential, proprietary, and trade secret information concerning Syngenta's efforts to research, develop, commercialize, and market Syngenta's most advanced product, Corn Amylase.  Corn Amlyase is the first enzyme to be expressed in corn that is targeted at facilitating the conversion of corn into bioethanol, a renewable fuel source for cars and other vehicles. Corn Amlyase is in the last stages of development and is expected to be brought to market in the near future.  Corn Amlyase promises to simplify production and raise fuel yield per acre, and provides a significant performance advantage over conventional industry technology.  Indeed, it has been publicly reported that Syngenta's work in this area has the potential to reduce the costs of ethanol production up to ten percent—an extraordinary competitive advantage given the current energy markets.

e.    Confidential, proprietary, and trade secret information concerning Syngenta's strategic plans and the support functions necessary to bring the foregoing technology forward, including finance, regulatory, business analysis, supply chain, account management, communications, marketing and advertising.

28.    The Trade Secret Information was created by Syngenta for its own exclusive benefit, and is set forth in documents and files in both manual and electronic mediums by Syngenta for its sole, exclusive and beneficial use.

29.    The Trade Secret Information was created and developed at great expense over many years of research, development, testing and business efforts (survey, analysis and strategy development), including the conducting of a significant amount of "negative know-how" experimental work.  A competitor, such as Defendant's new employer Danisco, with access to the Trade Secret Information would benefit enormously.  At a minimum, that competitor would be spared the time, expense and effort of research and developing of the Trade Secret Information.  Possession of, or access to, the Trade Secret Information by a competitor would put Syngenta at an unjust and substantial competitive disadvantage.  Unauthorized possession of, or access to, the Trade Secret Information constitutes misappropriation of a highly-valuable competitive advantage and asset that Syngenta has developed as the result of its own efforts.

30.    Syngenta takes reasonable steps to protect the Trade Secret Information from public disclosure.

31.    Syngenta permits only those persons who have need to know the Trade Secret Information to have access to it.

32.    Syngenta does not publicly disclose the Trade Secret Information and protects its proprietary and confidential nature in a number of ways, including but not limited to, restricting access to its facilities, limiting access to its computer systems and assigning passwords to access

information on computer databases, and requiring that the confidential information be kept in secure locations when not in use.

33.     In addition, Syngenta requires employees (and, where applicable, authorized third parties and customers) who have access to this information to execute agreements to safeguard the confidential information and trade secrets.    These agreements confirm the duty of such individuals to keep the Trade Secret Information confidential.

**III.    Syngenta's Employment Of Defendant In A Key Position With Unfettered Access To Syngenta's Most Proprietary Business Plans And Most Valuable Trade Secret Information**

34.     Defendant's key position as Syngenta's Global Business Director, Bioprocessing required him to have a comprehensive and detailed knowledge of Syngenta's operations, capabilities, methodological approaches, functions, and other Syngenta proprietary information, know-how, strategic plans, and the Trade Secret Information.    Defendant gained a comprehensive and detailed knowledge of Syngenta's proprietary and confidential business plans and strategies.

35.     Indeed, Defendant held the key position in Syngenta's bioprocessing and biofuels business, and had virtually unlimited access and influence of the course of the bioprocessing program and the Trade Secret Information.

36.     As Global Business Director, Bioprocessing, Defendant was responsible to lead the efforts of a cross-functional team to research, develop, and test various plant enzymes, and use that research and development work to support and deliver and market the Syngenta's entire ethanol biofuels portfolio.

37.     During his employment, Defendant held a leadership position, exercised strategic influence over the Company's enzymes and Biofuels business.  Defendant had full access to the Trade Secret Information in his direct area of responsibility (Bioprocessing), and extensive

access to, and knowledge of, trade secrets, confidential information, and business strategies concerning Syngenta's other enzyme-related businesses, including animal nutrition and Cellulosic Ethanol.

38.     In his capacity as Global Business Director, Bioprocessing, Defendant led Syngenta's Bioprocessing Leadership Team, was a member of the Company's Enzyme Leadership Team, and a member of the Company's Renewable Fuels Core Team.

39.     Defendant led or participated in a broad range of research and development functions designed to discover novel enzymes, expressing the enzymes in plants, identifying and defining the most effective ways to use enzymes in industrial processes, and validating the performance value of the enzymes in commercial scale facilities.

40.     As Syngenta's Global Business Director, Bioprocessing, and as the leader or member of various research and development teams, Defendant served as the business leader for the host of support functions necessary to bring the technology forward, including finance, regulatory, business analysis, account management, marketing, and communications.

41.     Defendant was intensely involved in the research, development, commercialization, and marketing plans for Syngenta's most advanced product, Corn Amylase. Defendant's involvement with Corn Amylase was unique.  No other company is engaged with this technology approach, which has great potential to provide Syngenta with significant performance advantage over conventional industry technology.  Defendant was involved in numerous critical analyses and decisions regarding Corn Amylase and was involved in the development of Syngenta's commercialization and marketing strategies, product definitions, and the late-stage development validation trials for Corn Amylase.

42.     With respect to Corn Amylase, Defendant had face to face relationships with all of the key members of Syngenta's development team, as well as all of Syngenta's external partners, and had direct relationships with Syngenta's potential customers. Defendant, through his employment, gained intimate knowledge of Syngenta's plans and work streams with respect to Corn Amylase, and had a significant hand in defining and prioritizing these plans. Defendant gained intimate knowledge of Syngenta's strengths and weaknesses, and is well equipped to guide strategies and tactics from a competitor against Syngenta's efforts to launch its new Corn Amylase technology.

## IV.     Defendant's Orchestrated Plan To Abruptly Resign And Take Employment With Genencor, A Direct Competitor Of Syngenta.

43.     On May 1, 2008, Defendant informed Syngenta that he was resigning his position with Syngenta to take employment with Genencor, which is a division of Danisco US Inc.

44.     Danisco, through its Genencor Division is a biotechnology company that, like Syngenta, develops and produces enzymes and bio-based products for various industries. Specifically, Genencor is a direct competitor of Syngenta, and engages in business in, the animal nutrition, biofuels and bioprocessing markets.

45.     Upon information and belief, Defendant's position at Genenco is Global Director of Grain Processing, and he will be based in Palo Alto, California, United States.

46.     Upon information and belief, Defendant's employment as Global Director of Grain Processing for Genencor will mirror his areas of key responsibility while at Syngenta regarding bioprocessing, enzymes, and biofuels.

47.     At his resignation, Defendant conceded to Syngenta that in his position with Genencor as Global Director Grain Processing, he would have marketing responsibility for Genencor's enzyme products. At his resignation, Defendant refused to discuss the terms of the

covenant not to compete in the Agreement, advised Syngenta that he had legal counsel, and stated that "we are adversaries."

48.    Upon information and belief, Defendant's abrupt resignation from Syngenta to take a similar position for Danisco was part of an orchestrated plan to disrupt Syngenta's business and evade Defendant's obligation not to compete with Syngenta, as he had agreed in order to be hired by Syngenta.

49.    As evidence of the surreptitious and calculated planning and groundwork done by Defendant and Danisco so as to fully surprise Syngenta, Defendant obtained a place to live in California, Defendant and Danisco jointly retained counsel in both California and New York, fully prepared and finalized a complaint for declaratory relief seeking to void the Agreement, and filed the complaint in California state court within hours of Defendant's sudden tender of his resignation from Syngenta in North Carolina on May 1, 2008.

50.    This pre-planned, coordinated resignation and simultaneous legal action in California demonstrates that Defendant's new employer well-recognizes the tremendous commercial value of having Defendant as a key employee.

51.    Defendant's employment with Dansico's Genencor Division breaches the restrictive covenants agreed to by Defendant in his Agreement with Syngenta.

52.    Defendant's employment with Genencor threatens to, and inevitably will, disclose the Trade Secret Information of Syngenta, and enable Defendant Danisco to compete unfairly and improperly with Syngenta.    For example, without limiting the foregoing: Defendant threatens to, and inevitably will, disclose and use to Syngenta's competitive disadvantage, proprietary technical information and methodologies related to the Trade Secret Information, including to enzymes, bioprocessing, and Corn Amylase; and Defendant threatens to, and

14

inevitably will, disclose will inevitably disclose, or at least use, to Syngenta's competitive disadvantage, proprietary technical information and methodologies related to "negative know-how" or inefficient efforts related to the Trade Secret Information, including to enzymes, bioprocessing, and Corn Amylase, that should not be explored or employed.

53.     Syngenta will suffer irreparable damage if Defendant violates the confidentiality provisions of the Agreement, or takes employment prohibited in the Agreement.

54.     Syngenta has no adequate remedy at law for such violations, and Syngenta is entitled to apply to the Court to enjoin such breach of contract to prevent the severe and irreparable injury to Syngenta that will result unless Defendant is enjoined as requested herein.

**FIRST CLAIM FOR RELIEF**
**BREACH OF COVENANT NOT TO COMPETE**

55.     Syngenta adopts and incorporates by reference paragraphs 1 through 54 hereof as if fully set forth herein.

56.     The Agreement between Syngenta and Defendant, including the covenant not compete in paragraph 6(d), is a valid and enforceable contract supported by adequate consideration.

57.     Defendant is bound by his Agreement with Syngenta, including the covenant not compete in paragraph 6(d). The covenant not compete is supported by valuable consideration, is reasonable as to its duration and scope, and is necessary to protect Syngenta's confidential information and trade secrets.

58.     By commencing employment with Danisco, Defendant has breached the terms of the Agreement, including but not limited to the covenant not compete in paragraph 6(d).

59.     Syngenta has met its obligations under the Agreement.

60.    Syngenta has suffered actual damages in excess of $10,000.00 as a result of Defendant's breach of the Agreement.

61.    Syngenta is entitled to injunctive relief to prevent Defendant from further breaching the terms of his Agreement.

### SECOND CLAIM FOR RELIEF
### TRADE SECRETS PROTECTION ACT

62.    Syngenta adopts and incorporates by reference paragraphs 1 through 61 hereof as if fully set forth herein.

63.    This claim arises under the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et seq.*

64.    Syngenta's Trade Secret Information constitutes trade secrets within the meaning of § 66-152, *et seq.*, and the common law of North Carolina.

65.    Upon information and belief, Defendant, through his employment with Danisco's Genencor Division, threatens to misappropriate, and inevitably will disclose and misappropriate Syngenta's Trade Secret Information, which is confidential to Syngenta and which was provided to Defendant under the terms of confidentiality in his capacity as a key employee and fiduciary of Syngenta.

66.    The confidential and proprietary business information and Trade Secret Information described above derive independent commercial value from not being generally known to, and not being readily attainable by proper means by, other persons who can obtain economic value from the disclosure and/or use of such information; are the subject of efforts that are reasonable under the circumstances to maintain the secrecy of such information; and constitute trade secrets under the North Carolina Trade Secrets Protection Act.

67.     Defendant's threatened misappropriation and misuse of Syngenta's trade secrets, through his employment with Danisco's Genencor Division, is malicious, willful and done in a manner which shows reckless and wanton disregard of Syngenta's rights and intent to injure Syngenta in its trade or business.

68.     Defendant's threatened misappropriations and misuse of Syngenta's trade secrets are for the purpose of using them as an employee of Danisco, in ways that would benefit Danisco.

69.     The foregoing conduct constitutes the misappropriation and threatened misappropriation of Syngenta's trade secrets which will proximately cause damage to Syngenta, for which Syngenta is entitled to recover damages pursuant to the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et seq*.  Such damages are to be measured by the economic loss suffered by Syngenta or the unjust enrichment to Defendant or his new employer caused by the misappropriation and use of Syngenta trade secrets, whichever is greater.

70.     The foregoing conduct was done in bad faith, was wrongful, was willful and was malicious.   Accordingly, Syngenta is entitled to recover punitive damages, in addition to Syngenta's actual damages and attorney fees, pursuant to applicable statutes.

71.     The misappropriation of Syngenta's trade secrets entitles Syngenta to temporary and permanent injunctive relief against Defendant pursuant to N.C. Gen. Stat. § 66-154.

### THIRD CLAIM FOR RELIEF
### INJUNCTIVE RELIEF

72.     Syngenta adopts and incorporates by reference paragraphs 1 through 71 above as though fully set forth herein.

73.    Defendant has violated the Agreement with Syngenta. He has wrongfully taken employment with a direct competitor of Syngenta in a capacity and location prohibited by his Agreement.

74.    The confidentiality and restrictive covenants in the Agreement are reasonable and valid. They afford Syngenta a reasonable protection for its legitimate business interests, proprietary information, and the Trade Secret Information, and do not unreasonably impede Defendant's ability to perform his trade or earn a living.

75.    Unless Defendant is restrained by this Court from violating the Agreement, Syngenta will suffer imminent grievous and irreparable injury.

76.    Accordingly, the facts of this case justify the issuance of a Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65 of the North Carolina Rules of Civil Procedure and the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-154. Only such relief can protect Syngenta adequately from continued injury due to Defendant's violations, and threatened violations, of his Agreement with Syngenta, and the threatened and inevitable disclosure of the Trade Secret Information.

77.    Syngenta has no adequate remedy at law for such injuries. Syngenta's damages, which will be substantial, are not readily ascertainable or readily calculable.

78.    The threatened injury to Syngenta outweighs any injury to Defendant. Defendant, after all, would only be required to live up to the terms of the Agreement that he signed, he would still be allowed to perform his trade and earn a livelihood, and could be paid a portion of his salary at Syngenta pursuant to the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Syngenta Biotechnology, Inc. respectively requests that the Court grant it the following relief:

1.     That a temporary restraining order, and preliminary and permanent injunctions be issued as follows:

    a.     Prohibiting and enjoining Defendant from continuing his current employment with the Genencor Division of Danisco

    b.     Prohibiting and enjoining Defendant from having any association with, or working with the Genencor Division of Danisco, or any other person acting in concert or participation with Danisco, either directly or indirectly, in any manner that violates any term of Defendant's Agreement;

    c.     Enjoining Defendant from using, disclosing, or otherwise misappropriating any confidential technical information of Syngenta, including without limitation, the Trade Secret Information described herein;

    d.     Enjoining Defendant from violating further the provisions of the Agreement between Syngenta and Defendant; and

    e.     Ordering Defendant to return to counsel for Syngenta within two business days of the Order any and all of Syngenta's property, including without limitation, any materials related, or referring to the Trade Secret Information.

2.     That Defendant be disgorged of, and Syngenta awarded, any and all profits, salaries, commissions, bonuses and benefits conferred by, and attributable to, Defendant on behalf of Danisco for his work in violation of the Agreement.

19

3.    Compensatory and consequential damages in an amount in excess of $10,000 as proven at trial resulting from Defendant's breaches of contract, actual or threatened misappropriation of trade secrets, and other wrongful conduct.

4.    Pre-judgment interest, and post-judgment interest at the statutory rate.

5.    Costs and attorney fees associated with having to bring forth this cause of action.

6.    That Syngenta have a trial by jury on all issues so triable.

7.    Any further legal and equitable relief that the Court deems just and proper.


Respectfully submitted, this the 12th day of May, 2008.


_M. Todd Sullivan_

M. Todd Sullivan, N.C. State Bar  No. 24554
John E. Pueschel, N.C. State Bar  No. 28030
WOMBLE CARLYLE SANDRIDGE & RICE, P.L.L.C.
2100 First Union Capital Center
150 Fayetteville Street Mall
P.O. Box 831
Raleigh, North Carolina  27602
Telephone:    (919) 755-6400

Attorneys for Plaintiff, Syngenta Biotechnology, Inc.

## VERIFICATION

The undersigned, Neal Briggi, being first duly sworn, deposes and says that he is Head of Enzymes for Syngenta Biotechnology, Inc., that he has read the foregoing Complaint of Syngenta Biotechnology, Inc. against Greg LeFebvre and knows the contents thereof; and that to his personal knowledge, the matters and statements contained therein are true, except as to those matters or statements made upon information and belief, and as to those he believes them to be true.

This the _12_ day of May, 2008.

SYNGENTA BIOTECHNOLOGY, INC.

By: _____

Neal Briggi

Sworn to and subscribed before
me this the _12_ day of May, 2008.

_____
Notary Public

RACHAEL ANNE HORES
Notary Public-State of Minnesota
My Commission Expires
January 31, 2012

My Commission Expires:

_1/31/12_

(SEAL)

## AGREEMENT CONCERNING CONFIDENTIALITY, PROPRIETARY RIGHTS AND RESTRICTIVE COVENANTS

This Agreement Concerning Confidentiality, Proprietary Rights and Restrictive Covenants ("Agreement") is entered into by and between Syngenta Biotechnology, Inc. ("Company"), and the undersigned ("Employee"). In partial consideration of both (a) the position offered to Employee by the Company on an at-will basis and (b) the Company's allowing Employee to have access to confidential, proprietary and trade secret information regarding the business and its customers and partners, Employee and the Company agree to the following:

1.  **Best Efforts**

    Employee shall devote Employee's best efforts to the service of the Company and such of its subsidiary, affiliate, or parent companies as the Company may designate (collectively "Syngenta") and shall perform to the best of Employee's ability such duties as may be assigned to Employee. Employee shall not engage in other employment or activities that are inconsistent with Employee's obligations and duties as an employee of the Company. Employee represents and warrants that the execution, delivery, and/or performance of this Agreement by Employee will not in any way violate or conflict with any other agreement by which Employee may be bound.

2.  **Inventions**

    (a). Employee agrees that any and all discoveries, inventions, improvements, ideas, methods, systems or plans relating to any process, machine, manufacture, composition of matter, plant or design, whether or not of a patentable nature, which Employee conceived or reduced to practice, or hereafter may conceive or reduce to practice, either solely or jointly with any other person or persons, at any time during the period of employment by the Company, or within six (6) months after termination of employment with Company, whether during working hours or at any other time (hereinafter "Inventions"), as well as all tangible items, including but not limited to documents, embodying such Inventions, shall be the sole and exclusive property of the Company, or its designee, and Employee will make full and prompt written disclosure thereof to the Company. Employee agrees to assign and hereby assigns Employee's entire right, title and interest in each such Invention to the Company or its designee. Such Inventions shall include any and all those relating to (a) any field of Syngenta's actual or contemplated operations or investigations at the time the invention is conceived or reduced to practice, including reasonable extensions thereof, and including any use for products made and/or sold by Syngenta or the making and/or selling of which may be contemplated by Syngenta, whether or not Employee's particular duties or responsibilities at the time are related to the specific field of such discovery, invention, improvement, idea, method, system or plan, and (b) any subject whatsoever in a field of work assigned to Employee by Syngenta. Company acknowledges and agrees that the provisions of this paragraph shall not apply to any Invention for which no equipment, supplies, facility or trade secret information of Syngenta is used by Employee, which is developed entirely on Employee's own time, or which does not (i) relate to the business of Syngenta (including, without limitation, current operations and



EXHIBIT

A

1

anticipated future operations, (ii) relate to Syngenta's actual or demonstrably anticipated research or development, or (iii) result from any work performed by Employee for Syngenta.

(b). Prior Inventions. Employee has listed in Schedule A below all ideas, inventions, discoveries, works of authorship and improvements in which I may have any right, title or interest, and which were made, discovered, developed or otherwise created by Employee (solely or jointly with others), or written wholly or in part by me, prior to my employment with the Company, but neither yet published nor filed in any patent or trademark office.

3.   **Patents**

At any and all times, both during employment by the Company or after termination thereof, Employee will, promptly on request of the Company, do all acts and execute, acknowledge and deliver all written instruments as may be necessary to perfect vesting in the Company or its designee the entire right, title, and interest of Employee in any such Inventions, and to enable the Company or its designee properly to prepare, file, and prosecute applications for, and to obtain, Letters Patent thereon in any and all countries selected by the Company, as well as reissues, renewals and extensions thereof, and to obtain the record title to such applications and Letters Patent, so that the Company or its designee shall be the sole and absolute owner thereof. Employee will at any and all times, both during employment by the Company or after termination thereof, cooperate with the Company and its counsel in the preparation, filing and prosecution of any application for any such Inventions, in the maintenance and enforcement of any Letters Patent for any such Inventions, and in any other proceedings, including but not limited to patent oppositions and litigation, which may arise in connection with any of the Inventions; provided, however, that should such services be rendered after the termination of employment with the Company, a reasonable compensation shall be paid to Employee on a per diem basis, not exceeding that which Employee was receiving from the Company at the termination of employment, in addition to reasonable traveling and personal expenses incurred by Employee in rendering the services.

4.   **Confidential Information**

During the term of employment, and thereafter, Employee will not, except as required in work assigned Employee by the Company, directly or indirectly, use for Employee or for others, or publish, or disclose to any third party any information, knowledge or data relating to the Company, its predecessors or affiliates or to any third party business contact of the Company, such as a customer or potential customer of the Company, as well as any other information, knowledge or data owned by, controlled by or in the possession of the Company, its predecessors or affiliates (whether or not utilized by the Company, its predecessors or affiliates and whether or not obtained, acquired or developed by Employee) or disclosed to the Company, its predecessors or affiliates or Employee by a third party during the term of employment with Company or any of its predecessors or affiliates(hereinafter "Confidential Information"). Confidential Information includes, but is not limited to: product or service information, including product formulations; fees, costs and pricing structures; distribution and sales methods and systems;

2

sales and profit figures; marketing information; advertising and pricing strategies; analyses; diagrams; reports; computer software, including operating systems, applications, and program listings; flow charts; manuals and documentation; databases; accounting and business methods; business plans; innovations, designs, ideas, inventions and new developments and methods, whether patentable or unpatentable and whether or not reduced to practice; trade secrets; manufacturing know-how; raw material and product specifications; analytical techniques; quality control tests and procedures; proprietary information; customer lists; existing and prospective clients, distributors, agents, suppliers and customers and other information related thereto; and all similar and related information in whatever form. It is agreed that the above obligations shall not apply to (a) any Confidential Information that is now publicly available, (b) any Confidential Information that subsequently becomes publicly available other than by a breach of this Agreement or other than by a breach of any confidentiality agreement with a predecessor or affiliate of the Company or (c) any Confidential Information that Employee receives free of any obligation of confidentiality or restrictions on use from a third party after termination of employment with the Company.

5.   **Copyrights**

Any material, including, but not limited to, written matter, prepared or authored by Employee during employment by the Company, whether during working hours or at any other time, for use by the Company or related to the actual or contemplated operations of the Company or its predecessors or affiliates at the time the material is prepared shall be considered a work made for hire, and the copyright in such material shall belong exclusively to the Company. The Company shall further have the unlimited right to use, copy, reproduce, publish or otherwise disseminate any such material. At any and all times, both during employment by the Company and after termination thereof, Employee shall promptly on request of the Company do all as may be necessary to vest in the Company or its designee the entire right, title and interest of Employee in the copyright in any such material.

6.   **Termination of Employment**

a.   Employee's employment with the Company may be terminated by either party at any time. Employee's execution of the Agreement does not create in Employee any contractual or implied right to continued employment with the Company, and the right of the Company to terminate Employee's employment at any time and for any reason or no reason, with or without notice, is specifically preserved. All documents and tangible things embodying or containing Confidential Information are the Company's exclusive property. Upon termination of employment, Employee shall deliver to the Company all materials and copies thereof, including, but not limited to, writings, records, data, photographs, memoranda, manuals, handbooks, contracts, orders, sales literature, price lists, customer lists, data processing materials, software programs, manufacturing and production materials and any other documents, whether or not obtained from the Company, which pertain to the Company, contain Confidential Information, or were received or used by Employee in connection with

3

employment by the Company. Termination of employment shall not affect the obligations of Employee which, pursuant to the express provisions hereof, continue in effect. Modification or change of Employee's duties by the Company shall not affect Employee's continuing obligation to fully observe the provisions of this Agreement.

b.     Employee shall also deliver all equipment, employee identification cards and passes, credit cards and other similar items of Company property to the Company promptly on termination of Employee's employment.

c.     Employee hereby authorizes the Company to deduct from any wages or payments otherwise due Employee, to the full extent permitted by law, the reasonable value of any Company property that Employee fails to return on termination of Employee's employment.

d.     Employee acknowledges and agrees that the duties and responsibilities to be performed by Employee for the Company are of a special and unusual character which have a unique value to the Company, the loss of which cannot be adequately compensated by damages in any action in law. As a consequence of Employee's unique position as the Global Business Director, Bioprocessing. Employee also acknowledges and agrees that Employee will have broad access to Confidential Information, that Confidential Information will in fact be developed by Employee in the course of performing duties and responsibilities for the Company, and that the Confidential Information furnishes a competitive advantage in many situations and that employment in the Marketing and/or Sales Business Development functions (the "Restricted Department") of another Person engaged in manufacture and/or sale of enzyme products for bioprocessing (the "Business") in the following countries: the United States of America, Brazil, Mexico, China, Canada, France, England, Germany (hereinafter defined as the "Major Enzymes Markets") would by virtue of the nature of such employment inevitably lead Employee to rely on or utilize such Confidential Information. Thus, Employee acknowledges and agrees that it is both reasonable and necessary for the covenants in this Section to apply to Employee's activities throughout the Major Enzymes Markets. In recognition of the special and unusual character of the duties and responsibilities of Employee when employed with the Company and as a material inducement to the Company (to continue) to employ Employee in this special and unique capacity, Employee covenants and agrees that upon termination of Employee's employment for any reason and for twelve (12) months thereafter, Employee shall not, on Employee's own account or as an employee, associate, consultant, partner, agent, principal, contractor, owner, officer, director, member, manager or stockholder of any other Person who is engaged in the Business (collectively, the "Restricted Persons"), directly or indirectly, alone, for, or in combination with any one or more Restricted Persons, in one or a series of transactions: (a) serve in any capacity in the Restricted Department of any Person who is engaged in the Business in any country in the Major Enzymes Markets; (b) provide consultative services to the Restricted Department

4

of any Person who is engaged in the Business in any country within the Major Enzymes Markets; (c) call upon any of the depositors, customers or clients of the Company (or any subsidiary, affiliate, or parent company of Company who is also engaged in the Business) who were such at any time during the twelve-month period ending on the termination of Employee's employment with the Company, whose needs Employee gained information about during his employment with the Company for the purpose of soliciting or providing any product or service similar to that provided by the Company or any subsidiary, affiliate, or parent company of the Company; (d) solicit, divert, or take away, or attempt to solicit, divert or take away any of the customers or clients of the Company (or any subsidiary, affiliate, or parent company of the Company who is also engaged in the Business) who were such at any time during the twelve-month period ending on the termination of Employee's employment with the Company, whose needs Employee gained information about during his employment with the Company; or (e) induce or attempt to induce any employee of the Company or any subsidiary, affiliate, or parent company of Company to terminate his employment with the Company or any subsidiary, affiliate, or parent company of Company or to accept employment with any Person (whether or not such employee was subject to a covenant not to compete with the Company). For purposes of this paragraph, "Person" shall mean any individual, person, partnership, limited liability company, joint venture, corporation, company, firm, group or other entity. In partial consideration for Employee's agreement to not compete with Syngenta in this manner, within ten (10) days of the end of: (a) each of the first 11 months of Employee's non-compete period Syngenta will pay to Employee an amount equal to ½ of Employee's monthly base salary, and (b) the end of the 12th month of such non-compete period, Employee shall be paid an amount equal to 25% of Employee's base annual salary, in each case as such salary existed on the date of termination. Notwithstanding the foregoing, in the event that (a) Syngenta or any successor to the Business elects to no longer actively fund such Business per se (in each event, an "Exit"), and (b) (i) Syngenta (or its successor) terminates Employee in connection with such Exit, or (ii) Employee elects to terminate his employment with Syngenta (or its successor) within 60 calendar days of Syngenta's (or its successor's) election to Exit, then the previously described non-compete provisions shall be deemed to not apply to Employee and Syngenta shall not be obligated to effect the previously described payments to Employee. For purposes of clarity the non-solicitation provisions shall be deemed to apply in any event.

7.   General Provisions

a.   Employee acknowledges that the following are Syngenta's sole and exclusive property: (x) all documents, files, records, telephone records, recordings, electronic transmissions, accounts, notebooks, computer hardware, software, and files, electronic mail, or other storage media and any copies thereof containing, referring to or constituting Syngenta's confidential information, as defined herein; (y) all documents, files, records, telephone records, recordings,

accounts, notebooks, computer hardware, software, and files, electronic mail, or other storage media and any copies thereof, whether or not containing, referring to or constituting Syngenta's confidential information, which are obtained or created at Syngent'a expense, using Syngenta's property or equipment, or during Employee's Syngenta work hours; and (z) all samples, books, periodicals and other materials provided to Employee by Syngenta, in the course of Employee's employment with Syngenta, or at Syngenta's expense.

b.  Employee acknowledges and agrees that Syngenta shall have full right of access to all Syngenta property as defined in Section 7(a) of this Agreement and that Employee shall have no privacy rights with respect to any such property and, further, that Employee shall turn over to Syngenta any such property immediately upon Syngenta's request.  Specifically, Employee shall not assume the confidentiality of any activities using Syngenta provided access or services relating to electronic mail, internet or intranet services.  Syngenta specifically reserves the right to review any files, message, or communications sent, received or stored on Syngenta provided computer systems.

c.  All provisions of this Agreement are intended to be interpreted and construed in a manner to make such provisions valid, legal and enforceable.  To the extent that any paragraph of this Agreement or any word, phrase, clause, or sentence hereof shall be deemed by any court to be illegal or unenforceable, such word, clause, phrase, sentence or paragraph shall be deemed modified, restricted or omitted to the extent necessary to make this Agreement enforceable.

d.  The promises set forth in this Agreement may be assigned by, and shall be binding upon the successors and assigns of the Company.  This Agreement may not be assigned by the Employee, but shall be binding upon Employee's executors, administrators, heirs and legal representatives.

e.  No waiver by the Company of any breach by Employee of any of Employee's obligations, convenants, or representations under this Agreement shall constitute a waiver by the Company of any prior or subsequent breach by Employee.

f.  This Agreement is the entire agreement of the parties with respect to its subject matter and may not be changed or amended orally but only by an agreement in writing, signed by both parties.  Any other understandings and agreements, oral or written, respecting the subject matter of this Agreement are superseded and canceled; provided, however, that any confidentiality agreements between Employee and any predecessor or affiliate of the Company shall not be terminated by this Agreement.

g.  Any notice required under this contract shall be deemed given upon deposit in the U.S. mail, postage prepaid, certified return receipt requested, addressed to the General Counsel of the Company at its place of business or to Employee at Employee's home address as reflected in the records of the Company.

6

h.    This Agreement shall be governed by and construed in accordance with the laws of Delaware without giving effect to the principles of conflicts of law under Delaware law.

Signature of Employee _____

Print Name of Employee _____Gregory Lefebvre_____    Date __July 21, 2006__

7

## SCHEDULE A

## PRIOR INVENTIONS (as defined in Section 2 (b))

## (if none, write "none")

None

(add additional pages as necessary)

Signed: _____ Date: July 21, 2006
Employee's Full Name  Gregory LeFebvre

8

EXHIBIT 2 TO
DECLARATION OF RODGER R. COLE

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
08 CVS 8376

SYNGENTA  BIOTECHNOLOGY, INC.,

Plaintiff,

v.

GREG  LEFEBVRE,

Defendant.

)
)
)
)
)
)
)
)
)
)
)

**DEFENDANT'S
MOTION TO DISMISS,
OR, IN THE ALTERNATIVE,
TO STAY PLAINTIFF'S ACTION**

NOW COMES the Defendant, Greg LeFebvre ("Defendant"), through his undersigned counsel, as his response to Plaintiff's Complaint in this action, and moves the Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, or, in the alternative, to dismiss or stay the above-captioned action pursuant to the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, or, in the alternative, to stay the above-captioned action pursuant to N.C. Gen. Stat. § 1-75.12 until a California state court action between Plaintiff and Defendant involving the same subject matter and same dispute as the above-captioned action proceeds to a final judgment.

I.     Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure on grounds that it fails to state a claim upon which relief may be granted.

1

(1)    Specifically, the covenant not to compete in the Agreement referenced in Plaintiff's Complaint is too broad in time, territory and scope of activities prohibited and unreasonable for protection of Plaintiff's legitimate business interests, imposes undue hardship on Defendant, and is against public policy, and is therefore void and unenforceable.

(2)    In addition, Plaintiff's claim for misappropriation and inevitable disclosure of its alleged trade secrets fails to state a claim upon which relief may be granted because Plaintiff's facts and alleged trade secrets in the Complaint that purport to support its claim are only generalized allegations and are otherwise insufficient to state a claim upon which relief may be granted.

II.    In the alternative, Defendant moves the Court to dismiss or stay the above-captioned action pursuant to the doctrine of forum non conveniens.

(1)    Another forum, California, is more convenient and available to determine this dispute.

(2)    Prior to the filing of the above-captioned action, Defendant commenced a civil action against Plaintiff in the Superior Court of California for Santa Clara County originally designated as Greg LeFebvre and Danisco US, Inc. vs. Syngenta Biotechnology, Inc., Case No. 108-CV-1117-3 (the "California Action"), which involves the same subject matter and dispute as the above-captioned action.

(3)    Plaintiff has appeared in the California Action through California counsel retained by Plaintiff, and Plaintiff has answered the complaint in the California Action and removed the California Action to federal court in California.

(4)    Defendant is an individual who resides in California and Plaintiff is a large multi-national corporation that is registered to, and actually does, conduct business in California.

(5)    The relief sought in the above-captioned action and the California Action is substantially the same and will impact Defendant in California where he lives and works.

(6)    The convenience of third party witnesses whose testimony likely will be relevant to and necessary for litigation of the parties' dispute also favors the California forum.

(7)    The Agreement that Plaintiff seeks to enforce in the above-captioned action does not require a North Carolina forum and provides that the Agreement shall be governed by and construed in accordance with laws of a state other than North Carolina.

(8)    The facts and circumstances of the parties' dispute favor litigation of their dispute in California rather than North Carolina.

In support of this motion pursuant to the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, Defendant refers the Court to his Affidavit filed in this action of even date herewith.

III.    In the alternative, Defendant moves the Court to stay the above-captioned action pursuant to N.C. Gen. Stat. § 1-75.12 until the above-mentioned California Action between Plaintiff and Defendant filed in the Superior Court of California for Santa Clara County and originally designated as <u>Greg LeFebvre and Danisco US, Inc. vs. Syngenta Biotechnology, Inc.</u>, Case No. 108-CV-1117-3, and subsequently removed by Plaintiff to the United States District Court for the Northern District of California, proceeds to a final judgment.

(1)    The California Action was filed prior to the filing of the above-captioned action in Wake County, North Carolina and involves the same subject matter and the same dispute as the above-captioned action.

(2)    The California court is a convenient, reasonable and fair place for a trial of the parties' dispute.

(3)    It would work substantial injustice and unduly exhaust the parties' resources and the judicial resources of North Carolina for the parties' dispute to be tried in a North Carolina court instead of the California court.

In support of this motion pursuant to N.C. Gen. Stat. § 1-75.12, Defendant refers the Court to his Affidavit filed in this action of even date herewith.


In further support of this motion, Defendant refers the Court to the arguments and authorities he will present at the hearing of this motion.

This 12ᵗʰ day of June, 2008.

                                    POYNER & SPRUILL LLP

                                    By
                                    Louis B. Meyer III
                                    N.C. Bar No. 11016
                                    P.O. Box 10096
                                    Raleigh, NC  27605-0096
                                    Telephone:  919-783-6400
                                    Facsimile:  919-783-1075

                                    **Counsel for Defendant**

4

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served a copy of the foregoing **Motion To Dismiss, Or, In The Alternative, To Stay Plaintiff's Action** in the above-captioned action upon counsel for the Plaintiff by placing a copy of the same in the United States Mail, postage prepaid, addressed to the following person at the following address:

M. Todd Sullivan
Womble Carlyle Sandridge & Rice
2100 First Union Capital Center
150 Fayetteville Street
Raleigh, NC 27602

**BY U.S. MAIL**

**Counsel for Plaintiff**

This the 12th day of June, 2008.

By: _____
Louis B. Meyer III

**Counsel for Defendant**

E<small>XHIBIT</small> 3 <small>TO</small>
D<small>ECLARATION OF</small> R<small>ODGER</small> R. C<small>OLE</small>

1   James W. Morando (State Bar No. 087896)
    Laura C. Roche (State Bar No. 174596)
2   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
3   San Francisco, CA 94104
    Telephone: (415) 954-4400
4   Facsimile: (415) 954-4480

5   Jeffrey S. Boxer (Appearing *Pro Hac Vice*)
    Emily Milligan (Appearing *Pro Hac Vice*)
6   Carter Ledyard & Milburn LLP
    Two Wall Street
7   New York, New York 10005
    Telephone: (212) 732-3200

8
    Attorneys for Plaintiffs
9   Greg LeFebvre and Danisco US Inc.

ENDORSED
FILED

MAY - 1 08

KIRI TORRE
IEF EXEC. OFFICER/CLERK
UPERIOR COURT OF CA
CITY OF SANTA CLARA
DEPUTY

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  IN AND FOR THE COUNTY OF SANTA CLARA

12

13   GREG LeFEBVRE and DANISCO US        Case No. 1 0 8 C V 1 1 1 7 0 3
     INC.,
14                                        COMPLAINT FOR DECLARATORY RELIEF
                    Plaintiffs,           (C.C.P. § 1060)
15
           vs.
16
     SYNGENTA BIOTECHNOLOGY, INC.,
17                                                    BY FAX
                    Defendant.
18

19                              **COMPLAINT**

20          The Plaintiffs, Greg LeFebvre and Danisco US Inc. (collectively "Plaintiffs"), by counsel,

21   hereby petition this Court for declaratory and other relief against the Defendant Syngenta

22   Biotechnology, Inc. ("Syngenta"). In support of said request for relief, Plaintiffs allege as

23   follows:

24                              **THE PARTIES**

25          1.     Plaintiff Greg LeFebvre ("Mr. LeFebvre") is an individual who resides in

26   Mountain View, California.

27          2.     Plaintiff Danisco US Inc. ("Danisco") is incorporated under the laws of the State

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23203\1558698.1

COMPLAINT FOR DECLARATORY RELIEF (C.C.P. § 1060)

1    of Delaware and has an office located in Palo Alto, California. Danisco is a biotechnology

2    company that develops and produces enzymes and bio-based products for various several

3    industries

4        3.       Defendant Syngenta is incorporated under the laws of the State of Delaware and its

5    principal office is located in Research Triangle Park, North Carolina.  Upon information and

6    belief, Syngenta is a biotechnology company that focuses primarily on creating products for use

7    in agriculture.

8                            **JURISDICTION AND VENUE**

9        4.       This Court has jurisdiction to hear the claims alleged in this Complaint and is a

10   court of competent jurisdiction to grant the relief requested.

11       5.       This Court has jurisdiction over Syngenta because the claims asserted herein

12   against Syngenta arise from acts or omissions by Syngenta in California or acts or omissions by

13   Syngenta outside California the effects of which will be felt in California.  Syngenta is qualified

14   to transact business in California and has appointed an agent for service of process in California.

15       6.       Venue is proper in this Court because the causes of action alleged in this

16   Complaint, and the liability arising therefrom, arose in the County of Santa Clara.

17                              **GENERAL ALLEGATIONS**

18       7.       From August 2006 until April 2008, Mr. LeFebvre was employed by Syngenta as

19   Business Director, Bioprocessing at Syngenta's offices in Research Triangle Park, North

20   Carolina.

21       8.       While employed at Syngenta, Mr. LeFebvre was responsible for commercializing

22   and marketing products for use in the biofuels industry.

23       9.       At the time Mr. LeFebvre began employment with Syngenta he was required to

24   sign an Agreement Concerning Confidentiality, Proprietary Rights and Restrictive Covenants (the

25   "Agreement"), an unsigned copy of which is attached as Exhibit A.

26       10.      Section 6(d) of the Agreement contains a broadly drawn restrictive covenant (the

27   "Restrictive Covenant") which prohibits Mr. LeFebvre from working for or with any company

28   engaged in any aspect of the "manufacture and/or sale of enzyme products for bioprocessing" in

1    any area of "the United States of America, Brazil, Mexico, China, Canada, France, England,

2    Germany" for a period of 12 months after the termination of his employment with Syngenta.  The

3    full text of the Restrictive Covenant is as follows:

4    6.d. Employee acknowledges and agrees that the duties and responsibilities to be
performed by Employee for the Company are of a special and unusual character

5    which have a unique value to the Company, the loss of which cannot be
adequately compensated by damages in any action in law.  As a consequence of

6    Employee's unique position as the Global Business Director, Bioprocessing.
Employee also acknowledges and agrees that Employee will have broad access to

7    Confidential Information, that Confidential Information will in fact be developed
by Employee in the course of performing duties and responsibilities for the

8    Company, and that the Confidential Information furnishes a competitive
advantage in many situations and that employment in the Marketing and/or Sales

9    Business Development functions (the "Restricted Department") of another Person
engaged in manufacture and/or sale of enzyme products for bioprocessing (the

10    "Business") in the following countries: the United States of America, Brazil,
Mexico, China, Canada, France, England, Germany (hereinafter defined as the

11    "Major Enzymes Markets") would by virtue of the nature of such employment
inevitably lead Employee to rely on or utilize such Confidential Information.

12    Thus, Employee acknowledges and agrees that it is both reasonable and necessary
for the covenants in this Section to apply to Employee's activities throughout the

13    Major Enzymes Markets.  In recognition of the special and unusual character of
the duties and responsibilities of Employee when employed with the Company

14    and as a material inducement to the Company (to continue) to employ Employee
in this special and unique capacity, Employee covenants and agrees that upon

15    termination of Employee's employment for any reason and for twelve (12)
months thereafter, Employee shall not, on Employee's own account or as an

16    employee, associate, consultant, partner, agent, principal, contractor, owner,
officer, director, member, manager or stockholder of any other Person who is

17    engaged in the Business (collectively, the "Restricted Persons"), directly or
indirectly, alone, for, or in combination with any one or more Restricted Persons,

18    in one or a series of transactions:  (a) serve in any capacity in the Restricted
Department of any Person who is engaged in the Business in any state in the

19    Major Enzymes Markets; (b) provide consultative services to the Restricted
Department of any Person who is engaged in the Business in any country within

20    the Major Enzymes Markets; (c) call upon any of the depositors, customers or
clients of the Company (or any subsidiary, affiliate, or parent company of

21    Company who is also engaged in the Business) who were such at any time during
the twelve-month period ending on the termination of Employee's employment

22    with the Company, whose needs Employee gained information about during his
employment with the Company for the purpose of soliciting or providing any

23    product or service similar to that provided by the Company or any subsidiary,
affiliate, or parent company of the Company; (d) solicit, divert, or take away, or

24    attempt to solicit, divert or take away any of the customers or clients of the
Company (or any subsidiary, affiliate, or parent company of the Company who is

25    also engaged in the Business) who were such at any time during the twelve-month
period ending on the termination of Employee's employment with the Company,

26    whose needs Employee gained information about during his employment with the
Company; or (e) induce or attempt to induce any employee of the Company or

27    any subsidiary, affiliate, or parent company of Company to terminate his
employment with the Company or any subsidiary, affiliate, or parent company of

28    Company or to accept employment with any Person (whether or not such

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 3 -

23203\1558698.1

COMPLAINT FOR DECLARATORY RELIEF (C.C.P. § 1060)

1    employee was subject to a covenant not to compete with the Company). For
     purposes of this paragraph, "Person" shall mean any individual, person,
2    partnership, limited liability company, joint venture, corporation, company, firm,
     group or other entity.
3

4    11.    Mr. LeFebvre has been offered and has accepted employment with Danisco's

5    Genencor division Grain Processing business unit based in Palo Alto, California as Danisco's

6    Genencor Division Global Director of Marketing, Grain Processing. As part of accepting this

7    employment with Danisco Mr. LeFebvre has procured a residence in California where he will be

8    based and work from Danisco's office in Palo Alto, California.

9    12.    Danisco has expressly directed Mr. LeFebvre not to retain, disclose or use any

10   Syngenta trade secrets in connection with his new employment or in performing his work for

11   Danisco. Mr. LeFebvre has complied with this directive and has not retained, disclosed or used

12   any Syngenta trade secrets since the termination of his employment with Syngenta.

13   13.    In the course of performing his job duties at Danisco, Mr. LeFebvre does not

14   intend to use or disclose any Syngenta trade secrets.

15   14.    Syngenta has nonetheless threatened to enforce the Restrictive Covenant against

16   Mr. LeFebvre and, upon information and belief, plans to try to prevent Mr. LeFebvre from being

17   employed by Danisco in the position he accepted in Palo Alto, California. When Mr. LeFebvre

18   submitted his resignation letter to Syngenta, he was informed Syngenta would immediately take

19   legal action to enforce the Restrictive Covenant against him.

20                                **FIRST CAUSE OF ACTION**
                                 **DECLARATORY JUDGMENT**
21
     15.    Plaintiffs reassert, re-allege, and incorporate by reference herein all facts and
22
     allegations set forth in Paragraphs 1 through 14 above.
23
     16.    An actual controversy has arisen and exists between Mr. LeFebvre and Danisco on
24
     the one hand and Syngenta on the other hand concerning whether the Restrictive Covenant
25
     contained in Section 6(d) of the Agreement is enforceable and whether it prevents Mr. LeFebvre
26
     from being employed by Danisco's Genencor division Grain Processing Business Unit in Palo,
27
     Alto, California.
28

COMPLAINT FOR DECLARATORY RELIEF (C.C.P. § 1060)

1    17.    Mr. LeFebvre will be injured if the Restrictive Covenant is enforced because he

2    will be deprived of the ability to undertake employment and earn a living in California.

3    Mr. LeFebvre, who is married and has a child, is the primary income earner in his family.

4    18.    Syngenta has taken the extreme position Mr. LeFebvre may not be employed by

5    Danisco despite the fact that Mr. LeFebvre is able to accept employment and work for Danisco

6    without using and disclosing any Syngenta trade secrets.

7    19.    Because of the actual controversy that has arisen it is necessary for this Court to

8    make a judicial determination of the rights and obligations of the parties under California law.

9    20.    The Restrictive Covenant contained in Section 6(d) of the Agreement is void as a

10    matter of law pursuant to Cal. Bus. & Prof. Code § 16600 which provides that "[e]xcept as

11    provided in this chapter, every contract by which anyone is restrained from engaging in a lawful

12    profession, trade, or business of any kind is to that extent void."

13    21.    The Restrictive Covenant contained in Section 6(d) of the Agreement is also void

14    as a matter of law because it is not narrowly tailored  and is not necessary to protect a trade secret

15    against an actual or threatened misappropriation.

16    22.    The Restrictive Covenant contained in Section 6(d) of the Agreement is void as a

17    matter of public policy because it violates California's strong public policy in favor of open

18    competition and freedom to pursue employment.

19    **REQUESTED RELIEF**

20    WHEREFORE, Plaintiffs hereby request that the Court grant the following relief:

21    1.    A binding declaration that the Agreement is void and unenforceable in its entirety

22    because it is permeated with illegality, or alternatively, for a binding declaration that Section 6(d)

23    of the Agreement is void and unenforceable under Cal. Bus. & Prof. Code § 16600;

24    2.    A binding declaration that Mr. LeFebvre is not prohibited from being employed by

25    Danisco;

26    3.    For compensatory damages;

27    4.    For attorneys' fees and costs; and

28    5.    For such other relief as this Court determines may be just and equitable.

Fardis Braun & Marel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 5 -    23203\1558698.1

COMPLAINT FOR DECLARATORY RELIEF (C.C.P. § 1060)

1

2  Dated: May 1, 2008                          FARELLA BRAUN & MARTEL LLP
                                               CARTER LEDYARD & MILBURN LLP
3

4
                                               By:  Laura C. Roche
5                                                   Laura C. Roche

6                                              Attorneys for Plaintiffs
                                               Greg LeFebvre and Danisco US Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 6 -                                                               23203\1558698.1

COMPLAINT FOR DECLARATORY RELIEF (C.C.P. § 1060)